# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                    | )                          |
|------------------------------------|----------------------------|
| **UNITED STATES OF AMERICA,**      | )                          |
|                                    | )                          |
| v.                                 | ) Criminal No. 10-cr-51 (RMC) |
|                                    | )                          |
| **MARK PRAY and**                  | )                          |
| **KENNETH BENBOW,**                | )                          |
|                                    | )                          |
| **Defendants**                     | )                          |
|                                    | )                          |

## MEMORANDUM OPINION

Kenneth Benbow moves for a judgment of acquittal or for a new trial after a jury convicted him of narcotics conspiracy; RICO[1] conspiracy; two counts of violence in aid of racketeering (VICAR) in a murder and attempted murder; possession with intent to distribute cocaine base (otherwise known as crack); two counts of using, carrying and possessing a firearm in the VICAR murder and attempted murder; and two counts of unlawful use of communication facilities to aid drug trafficking.

Mr. Benbow argues that some of these verdicts are contrary to the weight of the evidence, the verdicts are not supported by substantial evidence, the Court erred in charging the jury and in refusing to charge the jury as he requested, and the Court erred in denying his motion for judgment of acquittal at the close of the Government's case in chief. The motion has been joined, in relevant part, by co-defendant Mark Pray. A third co-defendant, Alonzo Marlow, has not sought acquittal or a new trial.

---

[1] Title 18, United States Code § 1962(d), makes it a crime to conspire to participate in a racketeer influenced corrupt organization (RICO).

Rule 29(c)(2) of the Federal Rules of Criminal Procedure provides that a court may set aside a jury's verdict and enter a judgment of acquittal. The court's review of the jury's verdict, however, is limited to a determination of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Washington*, 12 F.3d 1128, 1135-36 (D.C. Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Federal Rule of Criminal Procedure 33(a) provides that a court may order a new trial "if the interest of justice so requires."

The trial here was hotly contested and Mr. Benbow's defense counsel attempted to establish a wide distance between the cocaine dealing between Mr. Benbow and Mr. Pray and Mr. Pray's position as head of a RICO drug organization, labeled the Pray Drug Organization during trial. His position was that the Benbow-Pray dealings constituted a separate and distinct conspiracy from the Pray Drug Organization. That this attempt failed is obvious from the jury's verdicts. Reviewing the evidence from trial, the Court cannot say that the verdicts were irrational or that justice was not served. The motion will be denied.

# I

Jury selection in this case began on January 30, 2012, and on April 3, 2012, the jury returned its verdicts against co-Defendants Mark Pray, Alonzo Marlow, and Kenneth Benbow. As related to Mr. Benbow, Count 1 charged a narcotics conspiracy involving large quantities of phencyclidine (also known as PCP), cocaine, and cocaine base (also known as crack); Count 2 charged a RICO conspiracy; Count 4 charged the murder of Van Johnson, Jr., as

violence in aid of racketeering (VICAR) and Count 5 charged the attempted murder of Stephen Robinson as VICAR; Count 13 charged possession with intent to distribute crack; Counts 34 and 35 charged using, carrying and possessing a firearm in relation to the VICAR murder and attempted murder; and counts 55 and 63 charged unlawful use of a communication facility, *i.e.* a cellphone, in furtherance of drug trafficking. Mr. Pray was charged with these same counts except Count 13 (distribution of crack on a certain date), as well as multiple other counts not at issue here.

Mr. Benbow acknowledges that:

> The evidence adduced at trial established a narcotics conspiracy operating chiefly in the Barry Farm section of southeast Washington, DC. [sic] The primary drug distributed by the conspiracy was phencyclidine. Additional evidence established that members of the conspiracy also traded in marijuana, cocaine, and cocaine base.

Def.'s Mem. [Dkt. # 413-1] at 4.

### A. PCP Distribution

While Mr. Benbow maintains his innocence of all drug charges, he "specifically draws this Honorable Court['s] attention to his accountability for any amount of phencyclidine," *id*. at 5, for which he asserts the proof was lacking. He argues that there was neither testimony that he participated in any PCP transactions with Mr. Pray nor evidence by wiretaps or seized contraband that he knew or should have known of the conspiracy's PCP trafficking. Thus, he contends, no rational jury could have found him guilty of a conspiracy involving the distribution of PCP.

In the present motion, Mr. Benbow does not contest that the evidence supported a jury finding that he conspired with Mr. Pray and others in a narcotics conspiracy that distributed

marijuana, cocaine and cocaine base. In fact, the evidence was clear – and supported by testimony, wiretaps, and seized contraband – that Messrs. Benbow and Pray often joined together in buying large quantities of cocaine for distribution. Mr. Benbow only challenges the jury's conclusion that he also was guilty of PCP trafficking. Yet a conspirator may be convicted of substantive offenses committed by co-conspirators in the course of and in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 645-47 (1946). The jury did not credit Mr. Benbow's defense that he and Mr. Pray engaged in a separate cocaine conspiracy that was unrelated to the charged multi-drug conspiracy. Having concluded as a matter of fact that Mr. Benbow was part of the Pray Drug Organization, the jury could properly attribute such substantive offenses committed by co-conspirators to Mr. Benbow as they thought the evidence permitted.

The "jury is entitled to draw a vast range of reasonable inferences from [the] evidence." *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990); *see also United States v. Harrison*, 931 F.2d 65, 71-73 (D.C. Cir. 1991). While the jury *might* have found no link between Mr. Benbow and the Pray Drug Organization, or PCP distribution, those were certainly not the only inferences that could be drawn from the evidence. There was clearly evidence from which a rational finder of fact could have found that Mr. Benbow was a co-conspirator in the Pray Drug Organization and equally culpable for its multi-drug distribution. The Court has no basis to enter a judgment of acquittal or a new trial on this issue for either Mr. Benbow or Mr. Pray.

### B. Crimes of Violence

Darryl Travers testified as a Government witness to conversations he had with Mr.

Pray, with Mr. Benbow in immediate attendance, about the shooting of Van Johnson, Jr., and Stephen Robinson. As the description went, Messrs. Pray and Benbow followed Mr. Johnson from a club in Prince George's County; Mr. Benbow drove the car while Mr. Pray stood on a seat and stuck his upper body out of the sunroof of the car; Mr. Pray held a gun in each hand and fired them simultaneously, striking the car containing Mr. Robinson and Mr. Johnson multiple times (resulting in the death of Mr. Johnson and injuries to Mr. Robinson that kept him in the hospital for almost a year); and the rental car driven by Mr. Benbow was damaged in the process when it hit a curb or some other object (neither victim had a gun or took any action in response to the shots). This story was recounted, according to the testimony, by Mr. Pray while he and Mr. Benbow were both ecstatic from the excitement of the event. Mr. Benbow had called Mr. Travers to pick them up because their rental car was no longer drivable. Mr. Benbow told Mr. Travers that Mr. Johnson was shot because he had made false claims about Mr. Benbow which could have been dangerous for Mr. Benbow.

The parties stipulated to the time of the shooting. Cell phone records established that a cell phone known to be used by Mr. Pray was in contact with a cell phone known to be used by Mr. Benbow during that time. From these facts, Mr. Benbow argues that "[n]o reasonable trier of fact could ignore the obvious conflict [between] the testimony of Darryl Travers and the undeniable phone records . . . and the government failed to offer any reasonable explanation for the clear conflict." Def.'s Mem. at 9. In other words, if Mr. Benbow and Mr. Pray were talking by phone, it would have been impossible for Mr. Benbow to be also driving a car at high speed while Mr. Pray was also shooting two guns as they passed their target. The Government suggested in its closing argument that the phone connection might only have been a

stray "butt call." Mr. Benbow calls that idea "simply absurd" and argues that "[n]o reasonable jury could have accepted such an unsupported explanation." *Id*. As a result, Mr. Benbow argues that there was reasonable doubt whether he committed the shooting.[2]

It was for the jury to decide whether the evidence showed that Mr. Benbow was driving the car while Mr. Pray was playing cowboy with multiple firearms from the sunroof. The evidence of the cell phone connection was before the jury, as was the testimony of Mr. Travers. Defense counsel argued the first point and the Government argued the latter. While Mr. Benbow attacks the Government's "unsupported explanation" for the contact between the two men's cell phones, the members of the jury could have used their own life experiences and common sense to accept or reject that explanation. The jury weighed and resolved possible conflicts in the evidence and assessed witness credibility, matters which are peculiarly within its province and into which courts are loath to intrude. *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). The evidence was sufficient for the jury to decide the question and the Court cannot usurp its role. *United States v. Autori*, 212 F.3d 105, 120 (2d Cir. 2000).

The Court finds no basis to enter a judgment of acquittal or order a new trial on the jury verdicts that Mr. Benbow and Mr. Pray were guilty of VICAR murder and attempted murder in the death of Mr. Johnson and wounding of Mr. Robinson and that they used, carried and possessed a gun in committing those crimes.

---

[2] In a throw-away line, Mr. Benbow also suggests that there was reasonable doubt that the alleged motive for the killing qualified the crime as violence in aid of racketeering. Def.'s Mem. at 9. He made no further argument on the point and the Court deems it conceded. The Government argued that Messrs. Benbow and Pray murdered Mr. Johnson to enhance and maintain their reputations and positions in the RICO enterprise. By their verdicts, the jury agreed and the Court finds sufficient evidence to support its findings.

### C. Telephone Use Charges

Title 21 U.S.C. § 843(b) makes it unlawful to use a communications facility to "facilitat[e] the commission of any act or acts constituting a felony" under federal drug laws. Mr. Benbow challenges his conviction for violating 21 U.S.C. § 843(b) as it relates to Count 63.

The calls in question were between Mr. Benbow and Mr. Pray on February 23, 2010 (activations ## 5751, 5752, 5762 and 5791, introduced as Exhibits 100 and 101). The calls were recorded on a lawful wiretap and occurred approximately a year after the shootings of Mr. Johnson and Mr. Robinson. Law enforcement had visited Mr. Benbow's residence and talked to his girlfriend concerning her knowledge of the rental car and damage to the car on the night of the double shootings (the car had been rented in her name). Thereafter, Mr. Benbow called Mr. Pray and expressed great concern about the questions. He speculated that Mr. Travers (known as "Gangsta") must have been the source of information concerning the car and, by inference, that Mr. Travers informed the police that they were responsible for the shootings.[3]

Mr. Benbow argues that no evidence ties this call to drug dealing; at most, it involved an attempt by the participants to hide their involvement in the shooting. However, later in this same call Mr. Benbow told Mr. Pray, "I'm about to, uh, I'm about to meet my man [identified as a reference to a drug transaction] right quick. Bout three thirty and shit, then I'm a, uh' I'm a try to figure out where the f*** you at, man." *Id*. This part of the conversation clearly links the call to narcotics trafficking.

The complete evidence of the call supports the jury's inference and/or credibility

---

[3] The Government's witness testified that the questions to Mr. Benbow's girlfriend were intended to produce the concern that they did and to prompt guilty phone calls between Messrs. Benbow and Pray, which they did.

finding from the Government's witness as to the meaning of the quoted part of the February 23, 2010 call and its relationship to facilitation of a violation of federal drug laws. The Court finds no basis to disturb the jury's finding by either a judgment of acquittal or a new trial for either movant.

### D. Jury Instructions

At Mr. Benbow's request, the Court orally instructed the jury on his defense of multiple conspiracies. Additionally, the Court provided a written instruction to the jury on multiple conspiracies, as requested by Mr. Benbow. Instructions requested by Mr. Pray were also included in the Court's oral and written instructions to the jury. However, the Court did not submit to the jury the defense theories of the case prepared by Mr. Benbow or Mr. Pray and only read them orally. Messrs. Benbow and Pray argue that this failure to include their theories of the defense in the written jury instructions constituted error in violation of their rights to due process and requires a judgment of acquittal or a new trial.[4]

Jury instructions were discussed between the parties and the Court on multiple occasions and the Court provided the parties with its proposed final Final Instructions on March 22, 2012, *see* Dkt. # 388, and instructed the jury later that same date. On March 27, 2012, after the jury had been deliberating, but soon after the instructions were posted on the docket, Mr. Pray filed a motion asking the Court to submit a written copy of his theory of the case to the jury. Mr.

---

[4] The Court notes that the instructions were read to the jury on March 22, 2012, and entered on the docket on March 26, 2012. Mr. Pray objected to the failure to include his theory of defense by motion filed on March 27, *see* Dkt. # 389, with which Mr. Benbow later joined without substantive argument. *See* Dkt. # 391. In the pending motion, Mr. Benbow has advanced arguments about the back of a written copy of his defense theory with the instructions given to the jury, a motion with which Mr. Pray joins without substantive argument.

Benbow joined the motion. *See* Dkt. ## 389, 391. On March 27, 2012, the Court denied the motions. *See* Dkt. # 392.

Mr. Benbow argues that the Court's failure to include his theory of the case in its written instructions "impermissibl[y] devalued this vital instruction . . . over the defense's objection." Def.'s Mem. at 11. Because instructions are to be taken as a whole, Mr. Benbow argues that the omission of his defense theory from the written instructions led the jury to focus on, or ignore, one instruction over the others. *Id.* at 12.

The Court denied the motions to send the jury written copies of the Defendants' respective theories of defense because its instructions adequately conveyed the legal standards and defenses.[5] "A defendant in a criminal case is entitled to adequate jury instructions on his theory of defense, provided that there is evidence to reasonably support such a theory." *United States v. Howard*, 245 F. Supp. 2d 24, 39 (D.D.C. 2003) (quoting *United States v. Hopkins*, 716 F.2d 739, 749 (10th Cir. 1982)). However, "[a] defendant has no right to have any instruction on [the defendant's defense theory] given in the particular form he desired, or with any special emphasis." *Hopkins*, 716 F.2d at 750. Indeed, because there is "no constitutional right to a written copy of jury instructions," oral instructions that adequately convey the defendant's theory of defense fulfill a defendant's due process rights. *Williams v. Harrison*, 2008 WL 3925801, at *3-5 (S.D. Cal. 2008), *rev'd in part on other grounds*, 368 Fed. Appx. 764, 765 (9th Cir. 2010) (unpublished). For most of the centuries of common law, judges did not supply written copies of jury instructions for deliberations at all.

---

[5] As submitted, the defense "theories of the case" were advocacy pieces that would have been totally inappropriate for a judge to deliver to a jury.

Defendants' argument is that the omission of their theories of defense gave undue emphasis to the other parts of the jury instructions. The Court disagrees. With the advocacy removed from his proposed "theory of defense," Mr. Pray advanced general denials of guilt as to all charged offenses and assertions that the Government failed to meet its burden of proof. The Final Instructions sufficiently defined every element of the charged offenses; instructed the jury that the Government bore the burden of proof beyond a reasonable doubt; and specifically directed that the jury must acquit if the jury finds that the Government failed to meet its burden. Mr. Benbow advanced a different defense; he argued that the Government's evidence showed multiple conspiracies and failed to establish that he was guilty of conspiracy with the Pray Drug Organization as charged. The Court included in its written jury instructions an instruction on multiple conspiracies, as counsel requested. The jury was instructed that they must find that Mr. Benbow was a member of the charged conspiracy in order to convict him. Further, the jury was instructed that if they found that he was a member of a different conspiracy, he must be found not guilty of the charged conspiracy. Counsel for co-Defendants Pray and Benbow elaborated on their theories of defense, of course, in their closing arguments.

The Court finds, again, that the oral and written instructions adequately conveyed these Defendants' theories of defense and no violation of their constitutional rights occurred. There is no basis to grant a judgment of acquittal or a new trial.

## II

For the reasons given, the motion for a judgment of acquittal or for a new trial, Dkt. # 413, advanced by Defendants Benbow and Pray will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: June 21, 2012    /s/
ROSEMARY M. COLLYER
United States District Judge